# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-875


**MELISSA DORE, ET AL.**

**VERSUS**

**MITSUI SUMITOMO INS., USA, INC., ET AL.**



**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 08-C-1875-D
HONORABLE DONALD WAYNE HEBERT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN E. CONERY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, J. David Painter, Shannon J. Gremillion, Phyllis M. Keaty, John E. Conery, Judges.


**Saunders, J., dissents and assigns written reasons.**
**Keaty, J., dissents for the reasons assigned by Judge Saunders.**

**AFFIRMED.**

**David Ross Frohn**
**Frohn & Thibodeaux**
**Post Office Box 2090**
**Lake Charles, Louisiana 70602-2090**
**(337) 433-5523**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
 **Mitsui Sumitomo Ins., USA, Inc.**
 **Allan Johnson**
 **Ventura Foods, LLC**

**James Steven Gates**
**Morrow, Gates, & Morrow**
**Post Office Drawer 219**
**Opelousas, Louisiana 70571-0219**
**(337) 942-6529**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
 **Melissa Dore**
 **Cory Blake Credeur**
 **Cody Scott Credeur**

**Kevin Paul Tauzin**
**Attorney at Law**
**1228 Camelia Boulevard, Suite A**
**Lafayette, Louisiana 70508**
**(337) 988-7588**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
 **Melissa Dore, et al.**
 **Cory Blake Credeur**
 **Cody Scott Credeur**

**CONERY, Judge.**

In this automobile accident case, Plaintiff, Melissa Dore, asserts that her accident with Defendant, Allan Johnson, caused her extensive injuries for which she claimed damages. After trial, the jury found Johnson was one hundred percent at fault for the accident, but also found that Dore was not entitled to any damages for her alleged injuries. The trial court then denied Dore's motion for judgment notwithstanding the verdict (JNOV) and alternative motion for a new trial. Dore appeals the jury's verdict and trial court's denial of her motions. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On August 8, 2007, Dore was travelling south on Interstate 49 just outside of Opelousas, Louisiana, in the left lane. Johnson was travelling south in the right lane. The passenger side of Dore's vehicle came into contact with the driver's side of Johnson's vehicle as Dore passed Johnson. Dore and Johnson gave conflicting testimony about the location of the incident and severity of the impact. Johnson received a citation for improper lane change and paid the citation without contest.

Dore claims Johnson abruptly changed lanes causing extensive damage to the vehicle she was driving. She claims she was hurt in the collision and began medical treatment the day after the accident. Over the course of her treatment, she underwent two surgeries, one for injuries to the disc located at C6-7 in her neck and the other at L5-S1 in her lower back, all of which she related to the accident. Her treating doctors related her injuries and treatment to the accident, assuming her history of how the accident occurred and the severity of the impact was accurate.

Johnson claimed that, as he was attempting to begin a lane change from right to left, Dore brushed his vehicle and sped past him at a fairly high rate of speed,

causing only minor damages to the rental vehicle he was driving. Though at fault for improper lane change, Johnson claimed Dore was partially at fault and could not have been injured by this relatively minor impact.

On April 7, 2008, Dore filed suit against, *inter alia*, Johnson, Ventura Foods, L.L.C. (Ventura), Johnson's employer, and Mitsui Sumitomo Insurance USA Incorporated (Mitsui), Ventura's insurance carrier. It was stipulated that Johnson was in the course and scope of his employment with Ventura and that Mitsui had liability insurance coverage for this accident.

A jury trial was held November 2-3, 2011. The jury reached a verdict finding that Johnson was one hundred percent at fault for the accident, but that Dore suffered no damages as a result of the accident and awarded Dore nothing.

Dore filed a motion for JNOV and, alternatively, a motion for a new trial which were heard on May 7, 2012. The trial court thoughtfully considered and denied the motions for extensive oral reasons assigned. Thereafter, on May 17, 2012, Dore died from causes unrelated to this accident. She was survived by her two adult children, Cory Blake Credeur and Cody Scott Credeur. Her children were substituted as the proper parties plaintiff to continue the action.[1] Dore timely filed this appeal, presenting two questions for review:

> 1. Was the jury manifestly erroneous, in awarding no damages to Plaintiff, Melissa Dore, and finding that she suffered no damage, where there were stipulated property damages of $2,049.07,[2] medical expenses of $151,032.42, and two spinal surgeries which her surgeons related to the August 8, 2007 accident?

---

[1] For sake of clarity and brevity, we will continue to use "Dore" when referring to Plaintiff.
[2] Dore did not own the vehicle she was driving at the time of the accident. The parties stipulated outside the presence of the jury that property damages had been paid to the owner of the vehicle, Dore's mother. There was no line on the verdict form for property damages and none were claimed by Dore at trial.

2. Did the trial Judge commit legal error in failing to grant Plaintiff's Motions for post-trial relief (i.e., Motion for New Trial, alternatively, Motion for JNOV)?

## DISCUSSION

**Standard of Review**

"[A]ppellate jurisdiction of a court of appeal extends to law and facts." La.Const. art. 5, § 10(B). Our supreme court, in *Ryan v. Zurich American Insurance Co.*, 07-2312, p. 7 (La. 7/1/08), 988 So.2d 214, 219, reiterated the standard of review for facts as follows:

> The jury's determination of the amount, if any, of an award of damages . . . is a finding of fact. The Civil Code provides that "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." La. C.C. art. 2324.1.
>
> The standard of review of a jury's findings is well-settled:
>
> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Our supreme court set forth a two-part test for the reversal of a factfinder's determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Cole v. Allstate Ins. Co.,* 07-1046, p. 2 (La.App. 3 Cir. 6/05/08), 987 So.2d 310, 312, *writ denied*, 08-1463 (La. 10/31/08), 994 So.2d 535 (citing *Earls v. McDowell*, 07-17 (La.App. 5 Cir. 5/15/07), 960 So.2d 242).

"Whether an accident caused a person's injuries is a question of fact which should not be reversed on appeal absent manifest error." *Housley v. Cerise*, 579 So.2d 973, 979 (La.1991) (citing *Mart v. Hill,* 505 So.2d 1120 (La.1987)). As this court stated in *Bernard v. Hartford Insurance Co*., 09-71, p. 3 (La.App. 3 Cir. 6/3/09), 12 So.3d 1098, 1100-01, *writ denied*, 09-1524 (La. 10/9/09), 18 So.3d

3

1285 (quoting *Sportsman Store of Lake Charles, Inc. v. Sonitrol Security Sytems of Calcasieu, Inc.,* 99-201, p. 6 (La. 10/19/1999), 748 So.2d 417, 421):

> It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Lirette v. State Farm Ins. Co.,* 563 So.2d 850, 852 (La.1990); *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989); *Arceneaux v. Domingue,* 365 So.2d 1330, 1333 (La.1978); *Canter v. Koehring Co.,* 283 So.2d 716, 724 (La.1973). The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. *Lirette v. State Farm Ins. Co.,*[563 So.2d] at 853; *Sistler v. Liberty Mutual Ins. Co.,* 558 So.2d 1106 (La.1990).

The *Bernard* court further stated:

> When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.

*Id.* at 1102 (quoting *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989)).

Though it is well established that "a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct," the jury is responsible for determining what damages, if any, were caused by the accident. *Lasha v. Olin Corp.*, 625 So.2d 1002, 1005 (La.1993).

Louisiana jurisprudence has also established that when a person was in good health prior to an accident, and symptoms appear after the accident, that person's injuries are presumed to have resulted from the accident. *Bernard,* 12 So.3d 1098. That presumption does not apply and/or is overcome should the jury conclude the plaintiff was not credible and the claimed injuries were not caused by the accident. The trial court correctly charged the jury on all issues, and no objections were

4

lodged at trial and no issues raised on appeal as to the law to be applied to this case.

**Liability and No Damages**

In her first issue raised, Dore contends the jury was manifestly erroneous in finding she suffered no damages where there were stipulated property damages of $2,049.07. In Dore's original brief, counsel calls our attention to Exhibits P2W and P2X which show the property damage estimate and alignment costs for the vehicle Dore was driving total $2,049.02: "*Despite this stipulated evidence of damage, the jury found that Ms. Dore suffered no damage.*" What counsel for Dore does not reveal is that the vehicle was owned by Maizel Brasseaux, Ms. Dore's mother. As indicated in footnote 2 herein, the property damage claim was settled out of court with the *owner* of the vehicle and that issue was not presented to the jury. The damage estimate was relevant to Dore's attempt to prove the severity of the impact.

As to medical expenses, Defendants did stipulate to the authenticity of the medical bills, and stipulated that the medical expenses Dore was *claiming* amounted to $151,032.42. However, Defendants reserved their right to challenge medical causation. Indeed, that was the key issue decided by the jury.

The jury found Johnson was one hundred percent at fault for the accident, and Defendants do not contest liability on appeal. Defendants contend that the key facts at issue in this case are the severity of the accident and the feasibility of the accident having caused compensable injuries to Dore. Defendants claim Dore's credibility, or lack of credibility, was key to the jury's decision. According to Defendants, we must determine whether there is sufficient support in the record for

the jury's verdict of no damages. We agree with Defendants' framing of the relevant questions in this case.

The jury was presented with two diametrically opposed versions of how the accident occurred. Dore alleged she and Johnson were travelling side by side on I-49, she in the left southbound lane, he in the right lane, when Johnson's car suddenly moved into her lane and hit her vehicle, causing extensive damages and bodily injury.

Dore argues that her testimony was corroborated by her biomechanical engineer, the photographs of her mother's vehicle, and the damage estimates for her mother's vehicle. According to Dore's expert, the impact caused sufficient lateral movement to her body which was consistent with the severity of her injuries.

Johnson testified to the contrary, alleging that Dore sped past him and barely "brushed" his vehicle as he was trying to change lanes, the two vehicles barely touching. Johnson's vehicle had only minor damage on the left front fender, which he characterized as the size of a hand. Johnson claims he then had to "chase" Dore for approximately one mile, stopping her on the top of an overpass so that the incident could be reported for insurance purposes.

The investigating officer testified that Dore told him she was not injured. He did not take pictures of the vehicles, as the property damage was minor. The officer testified that after he completed his investigation, both Dore and Johnson drove their vehicles from the scene. Defendants' expert witness, a biomedical engineer, testified that this was a minor impact collision and could not have caused the severe injuries claimed by Dore.

The jury heard all of the evidence, viewed the property damage estimates

and photographic evidence of the damage to the vehicle driven by Dore, and even requested to see the photographs again during deliberations. Able counsel for Dore strenuously argued to the jury that for the vehicle Dore was driving to have sustained this much damage, the collision had to be severe.

We find there was sufficient evidence in the record, including the photographs, the testimony of Johnson, the testimony of the investigating officer and of Defendants' expert, that a jury could reasonably find that the accident was not severe enough to have caused significant injuries or damages to Dore, and that her claims were not credible.

In brief and at oral argument, counsel for Dore made much of the photos of Dore's mother's vehicle, which he claims showed "significant rubber marks" on the passenger side that could only have come from a significant impact from Johnson's left front tire being turned to the left at the time of impact. However, Johnson admitted he was trying to change lanes from right to left when Dore's vehicle sped past him and "brushed" his vehicle. The jury heard the evidence, saw the pictures, examined the damage estimates, and awarded no damages.

As to Dore's alleged injuries and medical causation, all of Dore's medical expert testimony as to causation was premised on the credibility of Dore and her truthfulness in reporting her medical history to her doctors. Dore specifically directs us to the testimony and medical records of Dr. Juneau. An MRI taken shortly after the accident was interpreted by Dr. Juneau and the radiologist to show high intensity changes at C-6/7 consistent with a recent injury at that level. However, Dr. Juneau also testified that if Ms. Dore's body did not move as she claims it did, then the accident could not have caused her injuries and her medical treatment would not have been related to the collision.

7

Despite counsel for Dore's protestations to the contrary, just because evidence of medical treatment was presented, it does not necessarily follow that the jury is required to conclude that the medical treatment was caused by this accident. Credibility calls are for the jury to decide. *Lirette,* 563 So.2d 850. Based upon the evidence and testimony in the record, a jury could reasonably conclude that Dore did not give accurate medical histories to her physicians and that she lacked credibility.

The conflicting evidence given by the parties and their experts in this case supports the conclusion that there are two permissible views of the evidence. *Lafayette City-Parish Consol. Gov't v. Person*, 12-0307 (La. 10/16/12), 100 So.3d 293. The jury's findings are reasonable based upon the evidence in the record, and the jury's verdict was not clearly wrong or manifestly erroneous. This assignment of error has no merit.

**Disposition of Post-Trial Motions**

In Dore's second question presented for review, she claims that the trial judge committed legal error in failing to grant Dore's motions for JNOV, or, alternatively, new trial.

A JNOV is warranted only when the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable jurors could not arrive at a contrary verdict. *Davis v. Wal-Mart Stores, Inc.*, 00-0445 (La. 11/28/00), 774 So.2d 84.

A motion for new trial, however:

requires a less stringent test than for a JNOV as such a determination involves only a new trial and does not deprive the parties of their right to have all disputed issues resolved by a jury. [*Joseph v. Broussard Rice Mill, Inc.,* 00-0628 (La.10/30/00), 772 So.2d 94.] "Although the language is similar between the standards for a JNOV and new trial,

there is a real difference between a finding that no evidence existed for a rational jury to reach a particular result and a finding that a jury could not have reached its conclusion on any fair interpretation of the evidence." *Gibson* [*v. Bossier City Gen. Hosp.*, 594 So. 2d 1332, 1336 (La. Ct. App. 1991).] Notably, in considering whether the verdict was supported by any "fair interpretation of the evidence" on a motion for new trial, the trial judge is free to weigh the evidence and make credibility determinations, and is not required to view the evidence in the light most favorable to the non-movant as on a JNOV motion.

*Martin v. Heritage Manor S. Nursing Home*, 00-1023, p. 4-5 (La. 4/3/01), 784 So.2d 627, 631(footnotes omitted).

The trial court below heard all the evidence and correctly evaluated the case under both the JNOV and new trial standard. As to the JNOV standard he stated: "I cannot find that reasonable persons could not reach different conclusions given the evidence presented."

Under the less strict new trial standards the trial judge stated:

The bigger question in my mind is the Motion for New Trial. I'm going to tell you that had I decided the damage section I would have decided it differently. So what? I'm not allowed to supplant unless I feel that some egregious miscarriage of justice has occurred. I can tell you that I would not have decided it that way. The jury had ample opportunity to hear two very good counsel make two very cogent arguments on what was presented. Dr. Juneau's testimony was well pointed out to the jury that the hotspots indicated by the MRI, CAT scans, the diagnostic testing indicated that the injuries which ultimately led to the surgeries in the neck and the back were consistent with a time period. I remember counsel making that argument quite clearly. Mr. Frohn says to the jury well, it's true, and he didn't bring his own medical guy, he just brought a biomedical guy, but - - biomechanical, I'm sorry, but he did ask him on cross, if her body didn't move would you find that the injuries are consistent with the accident? And he said no. They evidently accepted that. As I said, I would have decided it differently but I don't think - - you asked for a jury trial, that's why we have juries, and I don't get to supplant my thought process for juries, except for very limited and restricted circumstances and I do not believe we have risen to that level today and I deny the Motion for JNO[V] and the Motion for New Trial.

The experienced trial judge listened carefully to all of the arguments and correctly applied the law. His decision to deny a JNOV or new trial was within his

discretion and must be affirmed.

## CONCLUSION

Defendants characterized this case as a "she-said/he-said" case. We agree that this case was decided on credibility. The jury found: "she said—we didn't believe."

For the foregoing reasons, we affirm the jury verdict in favor of Defendants, Allan Johnson, Ventura Foods, LLC, and Mitsui Sumitomo Insurance USA, Inc. We also affirm the trial court's denial of Plaintiff, Melissa Dore's, motion for judgment notwithstanding the verdict and alternative motion for new trial. All costs of this appeal are assessed against Appellant, Melissa Dore.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

12-875

MELISSA DORE, ET AL.

VERSUS

MITSUI SUMITOMO INS., USA, INC., ET AL.

**SAUNDERS, J., dissents and assigns written reasons.**

The theory that the vehicles were moving in a substantially parallel direction is sacrosanct to the defense of a low impact "brushing" type contact. This theory, however, is fatally flawed.

The record shows that there was only minimal contact between the left front fender of the Johnson vehicle and the right side of the Dore vehicle. This damage was described as the "size of a hand" by Johnson. Additionally, the record contains a photo which established that there was a rubber scrape along the length of the right side of the Dore vehicle. This substantial contact between the Johnson vehicle's left front tire and the Dore vehicle's right side could only be made if Johnson's left front tire was "outside the wheel well" as testified to by Dore's mechanical engineer. This testimony is supported by common observation and the laws of physics and is uncontroverted in the record.

These same sources mandate that the steering wheel must be turned for the tire to leave the wheel well. The vehicle will follow the tire wherever it goes. These observances are also uncontroverted in the record.

The conclusion is inescapable that the rubber markings on the Dore vehicle cannot coexist with a "brushing" type contact since the Johnson tire had to be turned from its wheel well and into the Dore vehicle to make contact.

1

I have read the record, briefs, and the majority opinion in search of a theory that would allow a "brushing" type contact to coexist with the tire impact shown in the photograph in the record. I have found no such theory and no real discussion of the subject except in the arguments submitted by Dore.

In my view, the physical evidence categorically contradicts the theory of a "brushing" impact. The jury verdict is, therefore, based on a physical impossibility and, as such, is unsupported by the record. Accordingly, I respectfully dissent.