# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-700


**TAMMY LEWIS PERSONALLY AND OBO JAYSON LEWIS
AND JAYLON LEWIS**

**VERSUS**

**NATIONAL UNION FIRE INS. CO., COX COMMUNICATIONS, INC.,
AND JOHN ARTIGUE**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2020-4986
HONORABLE MICHELE S. BILLEAUD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## WILBUR L. STILES
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, D. Kent Savoie, and Wilbur L. Stiles, Judges.


**AFFIRMED.**

**Blake R. David**
**Reed K. Ellis**
**Robert B. Brahan, Jr.**
**Kenneth P. Hebert**
**Broussard, David & Moroux, LLC**
**Post Office Box 3524**
**Lafayette, LA 70502**
**(337) 233-2323**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Tammy Lewis**


**Matthew C. Nodier**
**Daniel E. Brauner**
**Amanda E. McGowen**
**Kimberly L. Wood**
**Nodier Law, LLC**
**6663 Jefferson Highway**
**Baton Rouge, LA 70806**
**(225) 448-2267**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Cox Communications, Louisiana, LLC**
    **John Artigue**
    **National Union Fire Insurance Company of Pittsburgh, PA**

**STILES, Judge.**

Plaintiff Tammy Lewis filed suit against John Artigue, Cox Communications Louisiana, LLC, and National Union Fire Insurance to recover personal injuries allegedly arising out of an automobile accident. Although a jury determined that Mr. Artigue was at fault, in whole or in part, in causing the accident, the jury rejected Plaintiff's claim that his negligence caused the complained of injuries and damages. Plaintiff appeals. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

Plaintiff alleged in the petition instituting this matter that, on November 4, 2019, she was driving her son to his elementary school located on Eucharist Drive in Lafayette when the Cox Communications van driven by Mr. Artigue struck the passenger side of her vehicle. Mr. Artigue was on a service call for Cox Communications at the time of the incident. According to Plaintiff, the collision occurred when Mr. Artigue "attempted a dangerous U-Turn in front of [Plaintiff] wherein he turned back into the path" of Plaintiff's vehicle.

Plaintiff reported to the emergency room following the accident and described lower back and knee pain. She later began treating with Dr. David Muldowny, an orthopedic surgeon, for neck, back, and knee pain. Dr. Muldowny treated Plaintiff conservatively but lumbar MRI imaging ultimately revealed disc herniation at the L5-S1 level and bulging at L4-L5. A cervical MRI showed herniation at C4-C5 and bulging at C3-C4. Dr. Muldowny offered cervical and lumbar surgery.

When the matter proceeded to an April 2023 jury trial, Defendants offered a differing account as to the occurrence of the accident. Mr. Artigue testified that he was traveling the perimeter of Eucharist Road, a cul-de-sac, in order to turn around to reach his destination and that Plaintiff attempted to overtake his vehicle in order

to enter her son's school entrance. Mr. Artigue explained that, although he brought his van to a stop upon seeing Plaintiff's vehicle, Plaintiff's vehicle sideswiped him. Defendants alleged that the impact was minimal, did not move Mr. Artigue's vehicle, and that it caused limited damage to Plaintiff's vehicle.

Defendants instead maintained that Plaintiff's alleged injuries were potentially caused by other occurrences, including a series of automobile accidents occurring both before and after the subject accident. Most notably, Plaintiff was involved in an intersectional collision on October 31, 2019, only four days before the subject accident. Defendants focused on the fact that Plaintiff failed to report this earlier accident in her visit to the emergency room or in her subsequent treatment with Dr. Muldowny. Plaintiff instead attributed a sudden onset of pain to the subject accident, which purportedly involved lesser speeds and lesser impact. Plaintiff was also involved in two subsequent accidents, in November 2021 and in April 2022.

Defendants further presented evidence to the jury that Plaintiff had a history of back and neck pain stemming from a 2009 motor vehicle accident. During that time, Plaintiff treated with Dr. John Cobb, who diagnosed Plaintiff with a disc herniation at the same level identified by Dr. Muldowny, L5-S1. In fact, Dr. Cobb determined that Plaintiff was unable to work due to her condition and offered the option of a lumbar fusion at the L5-S1 level. Defendants pointed out that Plaintiff did not undergo the 2010 surgery but continued to suffer from back pain. They noted that, in April 2018, Plaintiff was treated for chronic low back pain by Dr. John Bernard. Plaintiff reported at that time that she had been involved in an automobile accident in 2010.[1]

---

[1] The record contains references to Plaintiff's initial accident as having occurred in 2009 and/or 2010.

After four days of trial, the jury determined "that John Artigue/Cox Communications were at fault, in whole or in part," for the subject accident. The jury, however, responded "No," to the question of whether "the fault of John Artigue/Cox Communications caused, in whole or in part, the injuries and damages complained of in this case[.]" In keeping with the instructions of the verdict sheet, the jury did not reach subsequent questions regarding Plaintiff's fault in causing the accident, if any, or apportionment of fault between the parties.

The trial court entered a final judgment reflecting the jury's findings and dismissing Plaintiff's suit.

Plaintiff appeals, assigning the following as error:

1. The Jury erred in failing to award past and future medical expenses to Tammy Lewis despite the uncontradicted evidence at trial and every expert (including defendants' expert) causally relating her necessary past and future medical treatment[.]

2. The Jury erred in failing to award past wage loss and future loss of earning capacity to Tammy Lewis despite the uncontradicted evidence at trial and every expert (including defendants' expert) causally relating her past and future wage loss[.]

3. The Jury abused its discretion in failing to award general damages to Tammy Lewis despite uncontradicted lay and expert testimony that plaintiff suffered spinal injury and defendants even admitting that plaintiff suffered an injury[.]

4. The Jury erred in failing to follow this court's instruction relative to the *Housley* presumption when plaintiff proved that the presumption is applicable, and defendants failed to rebut the [p]resumption.

## DISCUSSION

*Causation of Injury and Damages*

Plaintiff's first four assignments of error challenge the jury's determination that she failed to prove that the accident of November 4, 2019 caused her injuries

and damages. The supreme court has explained that, in a personal injury suit, such as this one:

> [P]laintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. Plaintiff must prove causation by a preponderance of the evidence. The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident.

*Maranto v. Goodyear Tire & Rubber Co.*, 94-2603, 94-2615, p. 3 (La. 2/20/95), 650 So.2d 757, 759 (citations omitted). A jury's causation determination is a factual finding that will not be reversed on appeal absent manifest error. *Detraz v. Lee*, 05-1263 (La. 1/17/07), 950 So.2d 557.

While Plaintiff acknowledges that she sustained a lumbar injury in 2009, she contends that, at the time of the November 4, 2019 crash, she was in good health and was able to work as a licensed practical nurse. She explains that she had not received extensive lumbar treatment in the decade before the subject accident and maintains that she had no prior neck complaints.

She contends, however, that she experienced an immediate onset of pain at the scene of the November 4, 2019 accident and that she went to the emergency room where she reported lower back pain, knee pain, and numbness/tingling to her right foot. Two days later, Plaintiff began treating with Dr. Muldowny, where she again complained of lumbar pain. She also reported neck pain at that time.

Dr. Muldowny testified that Plaintiff informed him of her earlier treatment with Dr. Cobb, but that she represented that her symptoms had improved prior to the accident. Dr. Muldowny diagnosed Plaintiff as having a sprain of her cervical and thoracic spine, degenerative disc disease of the lumbar spine, and bilateral knee pain. Due to Plaintiff's continued complaints of pain in subsequent visits, Dr. Muldowny

4

ordered a June 2020 lumbar MRI, which confirmed a central disc herniation at L5-S1 and a July 2020 cervical MRI that revealed a central disc bulge at C3-C4. In addition to conservative treatment, Dr. Muldowny offered surgical options for both the lumbar and cervical problems.

As Plaintiff notes, Dr. Muldowny attributed her diagnosed conditions to the November 4, 2019 accident. Plaintiff further points out that Dr. Neil Romero, an orthopedic surgeon retained by Defendants to perform an independent medical exam (IME), also attributed her diagnosed conditions to the November 4, 2019 accident. Plaintiff thus argues that the jury was presented with unanimous medical testimony indicating that Plaintiff was injured in the crash and that her injuries were caused by the crash. Plaintiff maintains that the jury's failure to attribute any injuries or damages to the November 4, 2019 accident was therefore manifestly erroneous and that de novo review by this court is required.

Plaintiff's characterization of her evidence assumes, however, that the jury accepted her attribution of the onset of her injuries to the November 4, 2019 accident. Yet, Plaintiff's credibility in that attribution was the foundational inquiry presented to the jury. Critically, both Dr. Muldowny and Dr. Romero explained that they had no objective evidence that related Plaintiff's complaints to the subject accident. Each confirmed that his opinion regarding causation was, instead, dependent on Plaintiff's own attribution of the conditions to that particular accident.

Defendants questioned witnesses regarding the allegedly minor nature of the November 4, 2019 accident, presenting a videotape showing Mr. Artigue recreating his path around the cul-de-sac as well as his testimony that he applied his brakes and came to a stop before the collision. Defendant's expert in accident reconstruction and mechanical engineering, Jeremy Hoffpauir, explained to the jury that the

maximum speed of a typical vehicle travelling the perimeter of the cul-de-sac would be approximately ten miles per hour. Viewing the reenactment video, Mr. Hoffpauir opined that "it doesn't appear to be that the van is traveling faster than ten miles per hour." He also reported that his review of the accident photographs indicated damage consistent with a sideswipe type of collision and that the impact force was not sufficient to have moved Mr. Artigue's van. Plaintiff denied that the impact jarred her or moved her about the cabin.

Emphasizing Plaintiff's testimony that she did not move due to the allegedly minor impact of the November 4, 2019 accident, Defendants argued that Plaintiff's prior, October 31, 2019 accident must be considered. Bo Miller, the driver of the opposing vehicle in that earlier accident, testified that she was driving at approximately fifty miles per hour when Plaintiff turned in front of her at an intersection. Ms. Miller explained that she locked her brakes and slid into Plaintiff's vehicle, causing Plaintiff's car to spin out of her path of travel. The jury was presented with photographs revealing the damage to all vehicles involved in both accidents.

Despite those circumstances, Plaintiff failed to mention the October 31, 2019 collision when she reported to the emergency room following the November 4, 2019 accident. Plaintiff once again failed to disclose the October 31, 2019 accident when she first visited Dr. Muldowny two days later, on November 6th.[2] Rather, she fully attributed her complaints to the subject accident.

---

[2] Dr. Muldowny also explained that Plaintiff further failed to inform him of a subsequent, November 22, 2021 accident, despite the fact that Plaintiff had an increase in the pain afterward. She did, however, inform him of an April 9, 2022 accident which, again, exacerbated her complaints.

Given the close temporal proximity of both accidents to her medical treatment, the jury could have found that Plaintiff's omission of the occurrence of the earlier accident undermined her credibility as a historian to her health care providers. *See Edwards v. State Farm Mut. Auto. Ins. Co.*, 10-2216, p. 3 (La.App. 1 Cir. 5/6/11) (unpublished opinion) (2011 WL 2617384) ("The weight afforded a treating physician's testimony is largely dependent upon the facts upon which his opinion is based. A claimant's lack of credibility on factual issues can serve to diminish the veracity of the claimant's complaints to a physician."). *See also Dore v. Mitsui Sumitomo Ins.*, 12-875 (La.App. 3 Cir. 5/22/13), 117 So.3d 231, *writ denied*, 13-1953 (La. 11/8/13), 125 So.3d 1094. We leave such reasonable assessments undisturbed, finding that the record offers a reasonable basis for the jury's rejection of Plaintiff's claim.

*Presumption of Causation*

For these same reasons, we find no merit in Plaintiff's final contention that the jury erred in failing to apply the presumption of causation set forth in *Housley v. Cerise*, 579 So.2d 973 (La.1991). In *Housley,* the supreme court explained that:

> [a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and disabling condition.

*Id.* at 980 (quoting *Lucas v. Insurance Co. of North America*, 342 So.2d 591, 596 (La.1977)). This presumption is rebuttable upon a showing by the defendant that some other particular incident could have caused the injury in question. *Detraz*, 950 So.2d 557.

Although the trial court in this case instructed the jury as to the presumption of causation,[3] the jury determined that Defendants' negligence did not cause Plaintiff's damages or injuries. Thus, as in *Detraz*, 950 So.2d at 563, the jury "either found that plaintiff had not established the three elements necessary for the application of the '*Housley* presumption,' … or that the presumption did apply, but that defendants proved some other factor caused her injuries." Such determinations are factual in nature, as is the determination of causation, and are thus subject to the manifest error standard of review. *Id.*

The jury was required to evaluate Plaintiff's credibility in assessing her representation that she was in "good health" prior to the subject accident and that her injuries commenced only at that time. However, the jury was aware of Plaintiff's preexisting, chronic lumbar condition and treatment. Moreover, Plaintiff's account, alone, linked the November 4, 2019 accident with the onset of her complaints. Both Dr. Muldowny and Dr. Romero explained that their opinions regarding causation were dependent on that history. *See Edwards*, 10-2216. *See also Detraz*, 950 So.2d at 564 ("Credibility determinations, including evaluating expert witness testimony, are for the trier of fact.").

Further, in keeping with the *Housley* principle, the jury could have alternatively determined that Defendants rebutted the presumption by showing that

---

[3] The trial court instructed:

> When the plaintiff demonstrates that she was in good health prior to the accident at issue, that subsequent to the accident symptoms of the alleged injury appeared and continuously manifested themselves afterwards, and that through evidence, medical, circumstantial and common knowledge a reasonable possibility of causation between the accident and the injury claimed the jury is to presume that the plaintiff received the injuries claimed in the accident. Should these factors be satisfied it is the defendant's burden to point to some other specific incident which could have caused plaintiff's injuries.

some other particular incident could have caused the complained of injuries. *Detraz*, 950 So.2d 557. As described above, Defendants presented evidence regarding Plaintiff's involvement in the October 31, 2019 intersectional collision, only four days before the subject accident. The driver of the opposing vehicle estimated that she was travelling approximately fifty miles per hour before braking and sliding into Plaintiff's vehicle. The description of that earlier accident is in contrast to the parties' testimonies regarding the circumstances of the subject accident. Mr. Artigue, for instance, testified that he was able to bring his van to a stop in the collision with Plaintiff's vehicle. In her own testimony, Plaintiff explained that she could not recall her vehicle shaking or being jerked by the collision with Mr. Artigue's van.

Given those circumstances, we again find that the record supports the jury's determination that Plaintiff failed to carry her burden of proving causation of her injuries. We leave the jury's verdict undisturbed.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assigned to Plaintiff/Appellant Tammy Lewis.

**AFFIRMED.**