STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-267

KRISTY BAILEY

VERSUS

DAVID LEBLANC, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT
PARISH OF LAFAYETTE, DOCKET NO. 2010-8258
HONORABLE THOMAS R. DUPLANTIER, PRESIDING
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters and John E. Conery, Judges.

**REVERSED AND RENDERED.**

Conery, J., concurs in part and assigns reasons.

Dennis N. Thomson
Morris Bart, LLC
909 Poydras Street, Suite 2000
New Orleans, LA 70112
(504) 599-3233
**ATTORNEY FOR PLAINTIFFS/APPELLANTS**
    Kristy Bailey

Charles M. Ponder, III
Ponder Law Firm
1010 Common Street, Suite 1715
New Orleans, LA 70112
(504) 528-3066
**ATTORNEY FOR DEFENDANTS/APPELLEES**
    Greenwich Insurance Co., Macro Oil Co., Inc. and David R. Leblanc

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

On January 25, 2010, at approximately 1:00 p.m., Plaintiff, Kristy Bailey, was driving her Oldsmobile Alero eastbound on Verot School Road in Lafayette, Louisiana. She was stopped in traffic near the intersection of Verot School Road and Queens Row. At that time, Defendant, David Leblanc, was driving a tractor-trailer and approaching from the opposite direction on Verot School Road, planning to turn left onto Queens Row. At the time, Leblanc was in the employ of Macro Oil Company, Inc. and was in transit to their pipe yard with pipe situated on a flat-bed trailer. While making the left turn, Leblanc's tractor-trailer struck the left rear of Bailey's vehicle. The left rear quarter pane and tail light of Bailey's vehicle suffered damage.

At the scene of the accident, Bailey, twenty-two years old and five months pregnant at the time of the accident, complained of injuries and extreme distress as a result of the accident. That day she drove herself to the Iberia Medical Center Emergency Room. The records indicated she initially complained of lower abdominal pain and right side pain below the rib area.

The accident was investigated by Deputy Steve Wescott of the Lafayette Parish Sheriff's Department. Deputy Wescott stated, upon arriving at the scene, he asked Bailey if she needed an ambulance, but was told she did not. Bailey later stated in her deposition she was never asked if she needed an ambulance. Deputy Wescott maintained he did ask Bailey if she required an ambulance, and noted it was standard procedure to ask that question of all parties to an accident.

After investigating the scene, speaking with the parties to the accident, and a witness to the accident, Deputy Wescott concluded Leblanc's tractor-trailer was traveling approximately five (5) miles per hour at the time of the collision. He also

2

concluded Bailey's vehicle was stationary at the time of the accident, and did not move after impact. The damage to Bailey's vehicle was listed in Deputy Wescott's report as minor. Bailey's vehicle sustained slightly over $1500.00 in property damage, which required replacement of the left rear bumper assembly and left tail lamp. The accident report listed that Bailey complained of pain in her abdomen.

Tanya Breayne was an eyewitness to the accident. She had been returning to work after lunch, and was driving the vehicle immediately behind Bailey's on Verot School Road. Breayne stated, just prior to the accident, she had put her car into reverse and backed up slightly to avoid blocking the intersection of Verot School Road and Queens Row. Breayne watched as Leblanc attempted to turn left onto Queens Row. Breayne saw the trailer make contact with the rear of Bailey's vehicle. She noticed the tail light of Bailey's vehicle fall to the ground.

Breayne stated that the tractor-trailer was "going really slow" when it struck Bailey's vehicle. According to Breayne, after the impact, Bailey drove her vehicle to the side of the road, exited her vehicle and made a call on her cell phone. Breayne returned to work at Frank's Casing Crew, located near the accident scene. Later, she was asked to provide a statement to Deputy Wescott. At trial, Breayne testified when she arrived to give her statement to Deputy Wescott, she saw Bailey laying on the back of her vehicle talking on her phone.

On December 29, 2010, Bailey filed a personal injury lawsuit naming the following defendants: Leblanc, his employer Macro Oil, and its insurer, Greenwich Insurance Company. She claimed she endured significant neck and back problems as a result of the accident. Bailey relied on the testimony of Dr. Louis Blanda, an orthopedic surgeon, who treated her for neck and back problems beginning in February of 2011. Defendants pointed to the fact that Dr. Blanda did not begin to treat Bailey until nearly thirteen months after the accident.

3

Bailey testified she was severely shaken up and in emotional distress immediately following the accident. Leblanc confirmed this in his testimony, noting Bailey was in tears following the accident. She elected not to ride in an ambulance and drove herself to the Iberia Medical Center Emergency Room the day of the accident, complaining of abdominal, head and neck pain. An ultrasound of the fetus was performed and Bailey was released. She followed up a few days later with her family physician, Dr. Mark Davis, still complaining of abdominal pain and neck pain.

According to Bailey, over the next several months, she continued to experience pain while awaiting the birth of her son in July, 2010. During that time Bailey was also taking classes at Remington College until June, 2010, when she had to stop to give birth. She resumed her classes in September, 2010 and graduated in November. Bailey stated she endured pregnancy complications after the birth of her son. She also maintained she suffered continually from both neck and back pain during this time.

After graduation from Remington College, Bailey secured a job in the medical field. She claimed her severe neck and back pain eventually became unbearable, and she sought treatment with Dr. Blanda on February 8, 2011. Dr. Blanda ordered cervical and lumbar Magnetic Resonance Imaging (MRI) scans. The cervical results were thought to be relatively normal and the lumbar results showed some mild spurring.[1] Bailey underwent physical therapy, but maintained she could not continue due to the pain.

On September 29, 2011, she returned to Dr. Blanda with continued complaints of neck and back pain, as well as urinary frequency problems. Another cervical MRI was performed on November 11, 2011, which revealed bilateral

---

[1] Bailey notes these MRIs were performed in an open air MRI machine, due to her claustrophobia. Bailey notes it is well established that the results of MRIs performed in open air machines are not as clear as normal MRIs, which may well explain the relatively normal findings on the cervical MRI.

4

foraminal stenosis at the C6-7 level. Bailey continued to complain of back pain, which led to another lumbar MRI, performed on December 27, 2011. Dr. Blanda found the MRI revealed dessication and degeneration change of the T12-L1 disc with associated right paracentral disc bulge.

Dr. Blanda recommended Bailey undergo a cervical steroid injection, which was performed by Dr. Stephen Stairs on February 10, 2012. Bailey reported the injection gave her little relief. The possibility of surgery was discussed, but Bailey deferred that decision, citing her need to work and care for her children.

Bailey again saw Dr. Blanda on July 7, 2012, concerned that her neck symptoms were getting worse. Dr. Blanda ordered another cervical MRI, which was performed on July 28, 2012. Citing concerns over Bailey's complaints of headaches and blurred vision, an MRI of her brain was also ordered. The brain MRI was found to be normal, and the cervical MRI was unchanged from the previous one. Dr. Blanda opined that Bailey's neck was "possibly surgical," and wanted a discogram to confirm that opinion. Bailey made no decision on the discogram, and Dr. Blanda referred her to pain management. Dr. Blanda last saw Bailey on April 16, 2013.

Dr. Blanda concluded Bailey suffered a neck sprain resulting in internal disc disruption that could be treated conservatively with pain management. At trial, Dr. Blanda testified, based on the history given to him by Bailey of an automobile accident, he believed her neck and back problems were likely caused by that accident.

Dr. Stan Foster, an orthopedic surgeon, examined Bailey at the request of the defendants on December 4, 2012. He opined that Bailey likely suffered a strain of her neck and lower back based on the history given. He found the MRIs were normal and the objective findings during his examination were normal with the

exception of some weakness in the left arm.  Dr. Foster believed that any neck or back strain would have resolved within three to six months.

Defendants continually pointed to the gap in medical treatment for Bailey's back and neck pain, between the few days following the accident, until she sought treatment with Dr. Blanda in February of 2011.  Defendants also noted Bailey missed eight of the scheduled fifteen appointments with Dr. Blanda.  Defendants also attempted to cast doubt on Bailey's credibility by noting the differences between her estimation of how fast the tractor-trailer was traveling and that of Deputy Wescott and Tanya Breayne.

After the presentation of evidence, the trial court directed a verdict on the issue of liability, but denied Bailey's motion for directed verdict on the issue of causation.  The trial court then charged the jury with the applicable law, and the jury returned a unanimous verdict finding that Bailey was not injured as a result of the accident in question.  After entry of judgment in conformance with the jury's verdict, Bailey filed a Motion for Judgment Notwithstanding the Verdict (JNOV).  Despite earlier comments indicating it would grant a JNOV for Bailey in the event the jury found no injury, the trial court denied same, relying on this court's opinion in *Dore v. Mitsui Sumitome Ins., USA, Inc.*, 12-875 (La.App. 3 Cir. 5/22/13), 117 So.3d 231, *writ denied*, 13-1953 (La. 11/8/13), 125 So.3d 1094.  The trial court stated:

> As in *Dore*, all of the medical expert testimony as to the issue of causation was based on the history, report of injury and credibility of Kristy Bailey.  The jury could have reasonably questioned the credibility of the plaintiff with regard to her neck and low back injuries due to the 12½ month break in treatment between the time of the accident and date of her first visit with Dr. Blanda in February, 2011.  As stated in *Dore*, ". . . just because evidence of medical treatment was presented, it does not necessarily follow that the jury is required to conclude that the medical treatment was caused by this accident."  Credibility calls are for the jury to decide.  *Lirette*, 563 So.2d 850.  Based upon the evidence and testimony in the record, a jury could reasonably find that this accident was not significant

6

enough to have caused injuries to the plaintiff and that her failure to seek medical treatment for over a year post accident indicated a lack of credibility as to whether the plaintiff had suffered injury as a result of this accident. Thus, this Court would deny the Plaintiff's Motion for JNOV.

This appeal followed. Bailey asserts this court must conduct a de novo review of the record as the jury and the lower court committed manifest error in not finding she suffered injuries as a result of the accident in question.

This court recently in *Cole v. Allstate Ins. Co.*, 07-1046, p. 2 (La.App. 3 Cir. 6/5/08), 987 So.2d 310, 312, *writ denied*, 08-1463 (La. 10/31/08), 994 So.2d 535, discussed the standard of review for factual determinations as follows:

> The standard of appellate review of a trial court's factual findings is well settled and has long been established in this state. A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Our supreme court set forth a two-part test for the reversal of a factfinder's determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). *Earls v. McDowell*, 07-17 (La.App. 5 Cir. 5/15/07), 960 So.2d 242, citing *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La.1993). On appeal, the issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Id.* Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Earls, supra,* citing, *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

> > An appellate court cannot shirk its duty of appellate review of fact by simply deferring to a trial court's factual determinations because its reasons for judgment are couched in terms of a credibility call. *Earls, supra,* citing, *Rogers v. City of Baton Rouge*, 04-1001 (La.App. 1st Cir. 6/29/05), 916 So.2d 1099, 1104, *writ denied*, 05-2022 (La. 2/3/06), 922 So.2d 1187. This Court has a constitutional responsibility to review the entire record and to determine whether, as a whole, it supports the judgment rendered by the trial court. *Earls, supra,* citing, LSA-Const. Art. 5, section 10(B); *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742.

> > Proof by a preponderance of the evidence is defined as taking the evidence as a whole, the fact to be

> proved is more probably than not. *Earls, supra,* citing, *Fuller v. Wal-Mart Stores, Inc.*, 519 So.2d 366 (La.App. 2nd Cir.1988). Uncontroverted evidence should be taken as true to establish a fact for which it is offered absent any circumstances in the record casting suspicion as to the reliability of this evidence and sound reasons for its rejection. *Id.*

*Boxie v. Smith-Ruffin*, 07-264, pp. 3-4 (La.App. 5 Cir. 2/6/08), 979 So.2d 539, 545.

Bailey notes that both physicians in this case, including Defendant's doctor, believed she suffered injuries from the accident in question. Defendant's argued to the jury that Bailey's credibility, or lack of credibility, was the key to the jury's verdict that Bailey did not suffer any injury as a result of the accident. On appeal, we must determine if there is sufficient support in the record for the jury's verdict of no injury in this case. After a thorough review of the record, we find the record did not support the jury's verdict.

There was no question that an accident occurred involving a vehicle which Bailey was operating. Both Bailey's testimony and that of the eyewitness, Tanya Breayne, established the rear of Leblanc's tractor-trailer struck the left rear of Bailey's vehicle. The report of Deputy Wescott confirmed the damage to Bailey's vehicle.

There was conflict as to the severity of the impact. Breayne testified that the tractor-trailer was moving "really slow" at impact, and Deputy Wescott concluded it was traveling approximately five miles per hour. Bailey initially stated she believed the vehicle was traveling approximately 35 miles per hour. On cross-examination she qualified that statement by stating from the impact to her vehicle it "seemed like" that was how fast the tractor-trailer" was going. Although Deputy Wescott and Breayne testified the tractor-trailer's speed was not 35 miles per hour when the turn was attempted, it is not implausible that someone in a small automobile struck by a tractor-trailer may have believed it was going faster. In any

8

event, such an erroneous calculation by Bailey does not negate the uncontroverted evidence that a collision occurred between Leblanc's tractor-trailer and Bailey's automobile. Defendants also noted Deputy Wescott concluded Bailey's vehicle was not moved forward as a result of the impact. However, Bailey did not allege her vehicle moved forward; but that she was jerked around significantly by the impact. We note that the eyewitness, Breayne, could not have seen the actual impact to Bailey's vehicle, as her view was blocked by the tractor-trailer.

Defendants also argued both doctor's conclusion that Bailey suffered injuries as a result of the accident was based in large part on the history given to them by Bailey. More specifically, it is implied neither doctor would have believed the accident caused the injuries complained of without Bailey's embellishment of the speed the tractor-trailer was going at the time of the impact. However, a review of the record gives no support to that assertion. Dr. Blanda did not qualify his medical opinion based on the significance of the impact. Dr. Foster acknowledged that the history given to him was simply that "the January 25, 2010 accident [was] the cause of her pain." Thus, any argument that either physicians' medical conclusions were based on a high-speed vehicular accident is not supported by the record.

Defendants also argued Bailey's gap in medical treatment from the days just following the accident until February of 2011 belie her claims of neck and back injuries as a result of the accident. The record established Bailey was treated at the Iberia Medical Center Emergency Room the day of the accident, complaining of abdominal, head and neck pain. The emergency room records indicate Bailey initially complained only of lower abdominal pain and right side pain below the rib area, but did complain of neck pain when examined by the emergency room doctor. Bailey underwent an ultrasound of the fetus and was released. She

9

followed up a few days later with her family physician, Dr. Mark Davis, and complained of neck pain. Bailey explained the gap in seeking treatment for her neck and back problems, stating she "understood there was nothing she could do about her pain until after she gave birth because she was having a high-risk pregnancy."

According to Bailey, she endured her back and neck pain while awaiting the birth of her son, which occurred in July of 2010. During that time Bailey was also taking classes at Remington College until June, 2010. She resumed her classes in September, 2010 and graduated in November. Bailey stated her pregnancy complications continued after the birth of her son. She also maintained she suffered both neck and back pain during this time, but realized she would not be able to take any narcotic medications for her pain because she was breastfeeding her child. During this time, Bailey was also starting out in a new job, as well as caring for her infant son and other child. These factors, Bailey noted, made her hesitant to seek out time consuming doctor's appointments. When the back and neck pain became unbearable, she sought treatment with Dr. Blanda.

While we find the gap in medical treatment could reasonably influenced the factfinder's opinion as to the severity of Bailey's injuries suffered from the accident in question, considering the uncontroverted medical testimony that she suffered injury to her back and neck from the accident, we find it unreasonable for the jury to conclude the accident did not cause any injuries to Bailey.

Moreover, Bailey exhibited clear signs of distress at the accident scene. Leblanc acknowledged she was upset and was crying. Breayne's testimony of Bailey laying on her car and talking on her phone, approximately an hour after the accident occurred, does not refute the testimony that Bailey endured emotional distress as a result of the accident. The record also established, not only that

10

Bailey was pregnant at the time of the accident, but that it was a high-risk pregnancy. She had to endure several hours of waiting before undergoing an ultrasound to confirm her fetus was unharmed. On the issue of emotional distress, the jury was manifestly erroneous in concluding Bailey suffered no injury as a result of the accident.

A review of the transcript at trial indicates the trial court initially believed the evidence required the jury to find Bailey entitled to damages. Although denying the motion for directed verdict as to causation, the trial court did state that "[i]f the jury finds no damages, you will get a JNOV because I'm confident that the testimony of Dr. Foster did nothing to dispel the fact that she had an injury from this accident." Despite these comments, the trial court apparently believed this court's opinion in *Dore*, 117 So.3d 231, mandated that it deny Bailey's motion for JNOV. We disagree.

While a similar legal question exists in *Dore* as here, the facts are distinguishable. In *Dore*, as herein, the jury returned a verdict finding no damages were incurred as a result of the accident in question. A motion for JNOV by the plaintiff in *Dore* was also denied. A five-judge panel of this court, by a three to two split, affirmed the jury's verdict and the trial court's JNOV denial. The majority in *Dore* concluded the jury was reasonable in accepting the defendant's argument that the impact was merely a "brushing" incident, such that the vehicles barely touched. The jury in *Dore* also heard that the defendant driver actually had to pursue the plaintiff for approximately a mile after the contact so that the incident could be reported for insurance purposes. The jury evidently concluded such a minimal impact could not have caused the injuries complained of by the plaintiff in *Dore*. Two judges dissented, opining that the damages to the plaintiff's vehicle could not have been caused by a "brushing" type impact.

In the present case, there is no dispute that the rear of the tractor-trailer driven by Leblanc struck Bailey's stationary, compact vehicle. The pictures showed clear damage to the rear of Bailey's vehicle. There was no positive testimony to contradict Bailey's testimony that she was jerked around in her vehicle at impact. Leblanc could not see the impact and Breayne was blocked by the tractor-trailer from seeing Bailey's car at impact. Moreover, in *Dore* there was direct testimony from one of the physicians, that if the accident did not occur as the plaintiff described (significant impact, as opposed to a "brushing" type contact), the accident could not have caused the complained of injuries. Neither Dr. Blanda nor Dr. Foster made such a statement in the present case. Lastly, as was discussed previously, there were clear signs of emotional distress exhibited by Bailey, which were corroborated by Leblanc in his testimony. No such injuries were complained of by the plaintiff in *Dore*. For those reasons, we find *Dore* is distinguishable from the present case, and the trial court erred in relying on it to deny Bailey's motion for JNOV.

Because the validity of the lower court judgment is interdicted by error, we must perform an independent de novo review of the complete record and exercise our own discretion in fixing the appropriate general and special damage award for this injury. *Suhor v. Gusse*, 388 So.2d 755 (La.1980).

*I. Special Damages.*

Bailey alleged she was entitled to $17,115.29 in special damages, which were her accrued past medical expenses. This court in *Simon v. Lacoste*, 05-550, p. 3 (La.App. 3 Cir. 12/30/05), 918 So.2d 1102, 1104-05, discussed a plaintiff's entitlement to special damages:

> [W]hen a plaintiff alleges that medical expenses were incurred "and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of

12

that item in the judgment." [*Este v. State Farm Ins. Co.*, 96-99, p. 10 (La.App. 3 Cir. 7/10/96), 676 So.2d 850, 857.] A factfinder errs if it fails to award the full amount of medical expenses incurred as a result of the accident and proven by a preponderance of the evidence. *Revel v. Snow*, 95-462 (La.App. 3 Cir. 11/2/95), 664 So.2d 655, *writ denied*, 95-2820 (La.2/2/96), 666 So.2d 1084.

We find the uncontroverted medical testimony in the record of Dr. Blanda and Dr. Foster establishes that Bailey did, in fact, receive injuries from the subject accident. Therefore, we will award Bailey her incurred past medical expenses of $17,115.29.

*II. General Damages.*

In her petition, Bailey asserted claim for general damages, specifically including damages for pain and suffering from her bodily injuries, as well as mental anguish, principally involving fear for her unborn child. General damages include both mental and physical pain and suffering, inconvenience, the loss of physical enjoyment, and other losses of life or lifestyle that cannot be definitively measured in monetary terms. *McGee v. A C AND S, Inc.*, 05-1036 (La. 7/10/06), 933 So.2d 770; *Montgomery v. Opelousas Gen'l Hosp.*, 546 So.2d 621, 623 (La.App. 3 Cir.1989). There is no mechanical rule for determining general damages and the facts and circumstances of each case must control. *LeBlanc v. Allstate Ins. Co.*, 00-1128 (La.App. 5 Cir.11/28/00), 772 So.2d 400; *Maranto v. Goodyear Tire & Rubber Co.*, 25,114 (La.App. 2 Cir. 5/10/95), 661 So.2d 503.

As discussed earlier, we find the record sufficiently establishes Bailey suffered emotional distress as a result of the accident. She exhibited clear signs of distress at the accident scene, which was corroborated by the testimony of Leblanc. The record established, at the time of the accident, Bailey was in the midst of a high-risk pregnancy. Bailey testified she was much more concerned over the health of her unborn child at that moment than any pain she may have been

suffering. She had to endure several hours of waiting before undergoing an ultrasound to confirm her fetus was unharmed. Despite the ultrasound, Bailey testified she continued to worry that the accident may have harmed her unborn child.

The jurisprudence has consistently recognized in accident cases that the fear a pregnant mother may have over the health of her unborn child is a compensable item of damages. The following cases all specifically listed this fear as a component of the damages awarded. In *Gomez v. Galmiche*, 433 So.2d 386 (La.App. 4 Cir. 1983), a woman, who was nearly six months pregnant at the time of the accident, asserted a claim for damages in part due to her fear and anxiety about her unborn child's health during the remainder of her pregnancy. She also asserted an entitlement to damages for knee and shoulder pain which could not be treated with medication due to her pregnancy. The plaintiff therein was awarded $12,000.00 total general damages in that thirty year-old case. In a similar case, *Gagnet v. Zummo*, 487 So.2d 721 (La.App. 5 Cir. 1986), a pregnant woman received $10,000.00 in general damages when, as a result of an automobile accident, she endured emotional distress fear over the health of her child, as well as neck and back pain which could not be adequately treated with medication due to her pregnancy. In *Phipps v. Allstate Ins. Co.*, 05-651 (La.App. 5 Cir. 2/27/06), 924 So.2d 1087, the plaintiff, approximately four months pregnant at the time of the accident, asserted fear over potential injuries to her unborn child. She also claimed damages for a neck injury which was resolved within three months. The appellate court affirmed a $10,000.00 general damage award. In *Morris v. Flores*, 36,932, 36,933 (La.App. 2 Cir. 3/7/03), 840 So.2d 1257, the plaintiff, who was seven months pregnant, alleged fear for the well-being of her unborn child, and that her necessitous use of pain killers eliminated her ability to breast-feed her child. She

14

also suffered serious facial lacerations from the accident. The appellate court found the trial court's general damage award of $12,500.00 abusively low, and raised it to $25,000.00.

We find the above cases similar to the facts in the present case as Bailey exhibited clear, uncontroverted signs of emotional distress over the health of her unborn child. Bailey also testified she realized she could not take medication while she was pregnant, and then could not take medications post-pregnancy due to her desire to breast feed her child.

Bailey also requested damages due to her neck and back pain, which both Dr. Blanda and Dr. Foster attributed to the accident. Dr. Foster, who examined Bailey only once at the defendant's behest, noted it was typical for such neck and back strains to resolve within three to six months. He did not address whether Bailey's pregnancy may have extended this period. Dr. Blanda, who was Bailey's treating physician, ultimately concluded Bailey suffered from a neck sprain which deteriorated her cervical disc that was "possibly surgical," but could be treated conservatively with pain management. Dr. Blanda also concluded she suffered from some dessication and degenerative change in the lower back, which could be treated conservatively.

In *Jacobs v. City of Marksville*, 06-1386 (La.App. 3 Cir. 3/7/07), 953 So.2d 139, *writ denied*, 07-1093 (La. 9/14/07), 963 So.2d 999, a plaintiff therein complained of recurring headaches, neck and back pain. He exhibited signs of spasm in both the neck and back, and was diagnosed with neck and back sprain, which lasted for approximately ten months. The defendant in that case argued the injuries were soft tissue in nature and required only one steroid injection and less than one month of physical therapy. The trial court awarded $35,000.00 in general damages and this court affirmed.

15

In *Henry v. Wal-Mart Stores, Inc.*, 99-1630 (La.App. 3 Cir. 3/1/00), 758 So.2d 327, *writ denied*, 00-929 (La.5/26/00), 762 So.2d 1107, the plaintiff slipped and fell in a store. He sustained shoulder, lower back and leg pain as a result of the fall. He saw an orthopedic surgeon approximately five times over a period of ten months for his complaints and took prescription medications for his symptoms. The trial court awarded $22,000.00 in general damages, which was affirmed by a panel of this court.

We also find instructive the general damage awards in *Francis v. Commercial Ins. Co.*, 594 So.2d 1025 (La.App. 3 Cir. 1992) ($10,000.00 in damages for a six-month neck and back strain) and *Marshall v. A & P Food Co.*, 587 So.2d 103 (La.App. 2 Cir. 1991) ($10,000.00 in damages for a six-month neck and back strain). We find these awards relatively in line with *Jacobs* and *Henry*, noting these cases are over twenty years old.

After a review of the record and prior awards, considering the clear emotional distress exhibited by Bailey over the health of her unborn child, as well as her documented neck and back sprains, we find an appropriate general damage award in this case is $40,000.00.

### DECREE

For the foregoing reasons, this Court reverses the jury's verdict finding Kristy Bailey was not injured as a result of the accident in question. Furthermore, we render judgment in favor of the plaintiff, Kristy Bailey, in the sum of $17,115.29 in special damages and $40,000.00 in general damages. All costs of this appeal are assessed to defendants-appellees.

**REVERSED AND RENDERED.**

16

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

KRISTY BAILEY

VERSUS

DAVID R. LEBLANC, ET AL.

**CONERY, J., Concurs and assigns reasons.**

I concur with the majority's decision to award damages, but disagree as to the nature, extent, and amount of damages awarded by the majority.

The main questions we have to answer on appeal are:

Was there a reasonable factual basis for the jury to refuse to award any damages for emotional pain and suffering, mental anguish and distress over the possibility of Ms. Bailey losing her fetus? - No.  The record establishes that the jury's finding on this issue was clearly erroneous.

Was there a reasonable factual basis for the jury to refuse to award reasonable damages for a three-six month neck and back strain? - No.  Again, the record establishes that the jury's finding on this issue was also clearly erroneous.

Was there a reasonable factual basis for the jury to refuse to award damages for continued treatment of the neck and back injury? - Yes.  The zero verdict assumes such a finding and that finding is clearly supported by the record.

As we noted in *Dore v. Mitsui Sumitome Ins. USA, Inc.,* 12-875 (La.App. 3 Cir. 5/22/13), 117 So.3d 231, *writ denied*, 13-1953 (La. 11/8/13), 124 So.3d 1094:

> The standard of review of a jury's findings is well-settled:
>
> A court of appeal may not set aside a trial court's

> or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Our supreme court set forth a two-part test for the reversal of a factfinder's determinations: *(1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).*
>
> *Cole v. Allstate Ins. Co.,* 07-1046, p. 2 (La.App. 3 Cir. 6/05/08), 987 So.2d 310, 312, *writ denied,* 08-1463 (La. 10/31/08), 994 So.2d 535 (citing *Earls v. McDowell,* 07-17 (La.App. 5 Cir. 5/15/07), 960 So.2d 242).

*Dore*, 117 So.3d at 234-235 (emphasis added).

The majority correctly analyzed the facts surrounding the incident, initial hospital visit, and initial doctor visit. There is no question that the record shows that Ms. Bailey's vehicle was struck from the side near the left rear bumper by defendant's left turning tractor trailer. The truck driver simply cut the turn too short and liability was not seriously at issue. Ms. Bailey was stopped at the time of impact. She described that her vehicle was severely rocked back and forth from the impact. The pictures in evidence support that the collision caused moderate damage to the vehicle, corroborating Ms. Bailey's complaints of the nature and extent of the impact.[1] After the wreck, she was in tears as she was pregnant and was afraid for her fetus because of her high risk pregnancy. The truck driver corroborated that she was "shook up" and crying immediately following the accident. Her testimony that she called her doctor immediately and went to the E.R. after the police finished the accident report was uncontradicted and corroborated.

The fact that a witness later claimed that Ms. Bailey was sitting or lying on her trunk talking on her cell phone sometime after the wreck while she was waiting

---

[1] Property damages totaling $1,522.30 were paid and are not at issue.

for the completion of the accident report is not evidence that Ms. Bailey wasn't hurt and worried about her unborn baby.

The E.R. records corroborate Ms. Bailey's complaints of lower abdominal pain and about her worry over her fetus. An ultrasound was conducted and was normal. The E.R. records also corroborate Ms. Bailey's testimony that her neck and back hurt. She was treated and released with instructions to see her family physician for follow up. She saw Dr. Mark Davis several days later. No medication was prescribed because of the fetus, but she was instructed to return if complaints continued. She never did, nor was there any proof that she complained of neck and back pain when she went to the doctor for pre-natal check-ups. The hospital records for her baby's birth also contain no such complaints, and none were noted in follow up after the birth. She delivered full term without complications. She did not see a doctor for neck and back pain again until she saw Dr. Blanda over one year from the date of the accident and after her attorney had filed suit.

When she eventually saw Dr. Stan Foster for a defense I.M.E., Dr. Foster opined that based on all the records he reviewed, on the history he obtained, and on his examination, Ms. Bailey had suffered a three-six month cervical and lumbar strain.

Based on the totality of the evidence in the record, there is no reasonable basis for the jury to award zero damages for Ms. Bailey's mental anguish and emotional distress over the possibility of loss of her fetus, as well as her own pain and suffering for neck and back strain over a three-six month period.

There is a reasonable factual basis in the record for the jury to conclude that Ms. Bailey was not as severely injured as she said she was. As previously

indicated, Ms. Bailey did not consult Dr. Blanda for neck and back complaints until February 8, 2011, over a year *after* the accident and *after* her attorney had filed suit. The defendant further pointed out some inconsistencies in Ms. Bailey's testimony concerning her complaints, her missed appointments, and, especially, the fact that she didn't seek medical treatment for her neck and back pain from anyone until over a year after the accident, despite the fact that she worked for a doctor and could easily have sought such treatment. As we said in *Dore*, 117 So.3d at 237:

> Despite counsel for Dore's protestations to the contrary, just because evidence of medical treatment was presented, it does not necessarily follow that the jury is required to conclude that the medical treatment was caused by the accident. Credibility calls are for the jury to decide. *Lirette,* 563 So.2d 850. Based upon the evidence and testimony in the record, a jury could reasonably conclude that Dore did not give accurate medical histories to her physicians and that she lacked credibility.

In this case, there is a reasonable factual basis in the record for the jury to conclude that Ms. Bailey's neck and back complaints to Dr. Blanda and her treatment therefor were either exaggerated, or were unrelated to the wreck. I disagree with the majority's decision to award medical expenses for the treatment and testing ordered by Dr. Blanda, and to include in the general damage award money damages for that treatment and alleged continued pain and suffering for neck and back pain during and after her treatment with Dr. Blanda.

I would award medical expenses for Ms. Bailey's visit to the E.R., and the costs of the testing done at the hospital only. The record shows that those initial costs amount to $3,694.50.[2] There was no evidence as to the amount charged for Ms. Bailey's initial visit in follow up with Dr. Davis. The record would then

---

[2] The medical bills for the initial E.R. visit include:

| | |
|---|---|
| Iberia Medical Center | $2,477.50 |
| Iberia Emergency Physicians | $1,041.00 |
| Radiology Associates of Acadiana | $176.00 |
| Total | $3,694.50 |

support a general damage award of $15,000.00, which, in my opinion, would fairly compensate Ms. Bailey for her emotional pain and suffering due to the fear of losing her baby from the date of the wreck until normal delivery, and for her personal injuries and pain and suffering for a three to six month period for neck and back strain. *Gomez v. Galmiche*, 433 So.2d 386 (La.App. 4 Cir. 1983); *Gagnet v. Zummo*, 487 So.2d 721 (La.App. 5 Cir. 1986); *Phipps v. Allstate Ins. Co.*, 05-651 (La.App. 5 Cir. 2/27/06), 924 So.2d 1081.

I would award a total of $18,694.50 in general and special damages. I would apportion court costs and costs of this appeal equally.