STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT


DOCKET NUMBER
2023 CA 1098


ANTONETTE SMITH INDIVIDUALLY AND
ON BEHALF OF MINORS, TANIYAH DANIEL,
TEVIN DANIEL, JR. AND TRINITY SMITH

VERSUS

GOAUTO INSURANCE COMPANY
AND JAMES DEVAUN

Judgment Rendered: ____**JUL 0 1 2024**____


* * * * *

ON APPEAL FROM THE
NINETEENTH JUDICIAL DISTRICT COURT, SECTION 24
IN AND FOR THE PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA
DOCKET NUMBER 694184

HONORABLE DONALD R. JOHNSON, JUDGE PRESIDING


* * * * *


Chase Tettleton                         Attorneys for Defendant-Appellant
Stephen Babcock                         Devaun James
Adrian P. Smith
Baton Rouge, Louisiana



Wm. Tyler Downing                       Attorney for Plaintiff-Appellee
Baton Rouge, Louisiana                  Antonette Smith



**BEFORE:  THERIOT, PENZATO,
WOLFE, MILLER, and GREENE, JJ.**

Theriot, J. Dissents and Assigns reasons

Penzato, J., dissents for the reasons assigned by
Judge Theriot

**GREENE, J.**

This personal injury suit arises from an automobile accident. After a bench trial, the trial court found the defendant driver 100% at fault for causing the accident and signed a judgment awarding special and general damages to the four plaintiffs. The defendant driver appeals the amount of general damages awarded to one of the plaintiffs, the driver of the vehicle he hit. After review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of March 24, 2019, Devaun James[1] was driving to the Walmart Supercenter on U.S. Highway 190 in Eunice, Louisiana. As Mr. James attempted to turn left into the Walmart parking lot, he struck the driver's side door of an oncoming vehicle driven by Antonette Smith, and occupied by her three young children, Taniyah Daniel (age 8), Tevin Daniel, Jr. (age 5), and Trinity Smith (age 3). After the accident, Ms. Smith and her children were seen at a local emergency room. Two of the children were treated for minor injuries and all three were discharged the same day. Ms. Smith, who was eight weeks pregnant, presented in the emergency room with complaints of abdominal pain, back pain, and headache. She was diagnosed with a "[t]hreatened abortion," given pain medication, and discharged with instructions for pelvic rest and to follow up with her private physician. Ms. Smith saw her obstetrician the next day.

Over the next ten months, Ms. Smith underwent limited chiropractic care; had an MRI, which showed a lumbar disc protrusion and disc tear; and, received an injection for low back pain radiating into her left buttock and leg. During this time, in October 2019, she also gave birth to a healthy fourth child. At the time of trial, about four years after the accident, Ms. Smith continued to have low back pain, as well as left leg pain and weakness that caused her to frequently fall. According to Ms. Smith, chiropractic treatment and physical therapy hurt her condition more than it helped; and, although the single steroid injection had given her temporary relief, she could not afford more injections.

_____

[1] Although the petition incorrectly identifies the defendant as "James Devaun," Mr. James testified at trial that his name is "Devaun Ronnel James." The judgment also correctly references him as "Devaun James."

On February 19, 2020, Ms. Smith filed a petition for damages, individually, and on behalf of her three children, against Mr. James and his automobile insurer, GoAuto Insurance Company. The matter eventually proceeded to a bench trial, where Mr. James and Ms. Smith both testified and the parties introduced documentary evidence. On March 31, 2023, the trial court signed a judgment assessing Mr. James with 100% fault in causing the accident and awarding damages to Ms. Smith and her children. After granting a new trial regarding an issue not relevant here, the trial court signed an amended judgment, on June 1, 2023, finding Mr. James liable to Ms. Smith for $242,549.15, consisting of $7,549.15 in past medical expenses, $250,000 for pain and suffering, and reduced by $15,000, due to Ms. Smith's concession that she was uninsured at the time of the accident and subject to the "no pay, no play" statutory exclusions found in La. R.S. 32:866. The trial court also found Mr. James and GoAuto solidarily liable to Ms. Smith for general damages of $15,000, consisting of $10,000 for fear of losing her unborn child, and $5,000 for loss of enjoyment of life.[2] The trial court declined to award Ms. Smith future medical expenses, finding she had failed to carry her burden of proving entitlement to such.

Mr. James appeals from the June 1, 2023 judgment. In a single assignment of error, he contends the trial court's $265,000 general damage award to Ms. Smith is abusively high.

## GENERAL DAMAGES

General damages are those that are inherently speculative and cannot be fixed with mathematical certainty. *CD v. SC,* 2022-00961 (La. 6/1/23), 366 So.3d 1245, 1248. They involve mental or physical pain and suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other lifestyle losses that cannot be definitively measured in monetary terms. *Id.* at 1248-49. In a personal injury suit, a pregnant woman's fear regarding her unborn child's health is compensable as part of a general

---

[2] Although not at issue here, the amended judgment also found Mr. James and GoAuto solidarily liable to Ms. Smith for: $3,353.17 for Taniyah Daniel's injuries ($353.17 past medical expenses and $3,000.00 pain and suffering); $4,421.56 for Tevin Daniel, Jr.'s injuries ($421.56 past medical expenses and $4,000 pain and suffering); and, $5,343.17 for Trinity Smith's injuries ($343.17 past medical expenses and $5,000.00 pain and suffering). We also note that GoAuto is not a party to the appeal.

3

damage award. *See Bailey v. Leblanc*, 2014-267 (La. App. 3 Cir. 11/12/14), 151 So.3d 1004, 1012, *writ denied*, 2014-2594 (La. 3/6/15), 162 So.3d 372. *Generally, also see* Annotation, 145 A.L.R. 1104, *Mental distress from pregnant woman's apprehension or realization of injury to or loss of child, as element of damages in action for personal injury* (orig. pub'd. in 1943).

The trier of fact, whether judge or jury, has much discretion in the assessment of damages. La. C.C. art. 2324.1. This discretion, however, is not unfettered. *Pete v. Boland Marine and Mfg. Co., LLC*, 2023-00170 (La. 10/20/23), 679 So.3d 636, 639. An appellate court employs a two-step analysis in evaluating a general damage award. The initial inquiry is whether the trier of fact abused its discretion in assessing the amount of damages. *Pete*, 379 So.3d at 638-39. This inquiry requires consideration of: (1) the particular facts and circumstances of the case under review, including the particular injuries and their effects upon the injured person, as well as (2) prior awards for similar injuries. *Id.* at 643-44. The appellate court reviews the entire general damage award, rather than any particular item in isolation. *Doe v. ABC School*, 2019-0983 (La. App. 1 Cir. 12/17/20), 316 So.3d 1086, 1104, *writ denied*, 2021-00098 (La. 3/9/21), 312 So.3d 582. If the court finds an abuse of discretion, it then considers the prior similar awards to determine the highest or lowest point that is reasonably within that discretion. *Pete*, 379 So.3d at 639. As noted, the trial court herein awarded Ms. Smith general damages of $265,000, consisting of $250,000 for pain and suffering, $10,000 for fear of losing her unborn child, and $5,000 for loss of enjoyment of life. Moving to the first step of our general damage evaluation, we now review the record evidence relevant to Ms. Smith's particular injuries and their effects upon her.

### Ms. Smith's injuries, treatment, and the after effects

Ms. Smith was 28 years old, and, as noted, eight weeks pregnant with her fourth child, on the date of the accident. Before then, Ms. Smith had never been in an automobile accident, and she had no history of back pain, neck pain, leg pain, or headaches. At trial, Ms. Smith testified that Mr. James' car smashed in her driver side door, caused the airbag to deploy, and shattered her windshield. Her first concern was for her three children in the car and for her unborn child. She immediately felt pain in

4

her stomach area, left leg, and back. The abdominal pain hurt so much that she feared she had lost her unborn child. After being diagnosed with a "threatened abortion" at the emergency room, her fear continued. About two weeks after the accident, Dr. Joseph E. Turk, a chiropractor, diagnosed Ms. Smith with lumbar strain/sprain, cervical strain/sprain, headache, and a severe contusion to her right femur. In June 2019, Ms. Smith's pregnancy was classified as high risk because her unborn child developed a kidney condition, although the condition was unrelated to the automobile accident. Between June 2019 and January 2020, Ms. Smith saw Dr. Turk four more times for back, leg, and neck pain, and headaches. In October of 2019, Ms. Smith's child was born. In December 2019, Ms. Smith underwent a lumbar MRI, which showed a small disc protrusion and disc tear at the L5-S1 level. In February 2020, Dr. Stephen Wyble, a pain medicine physician, gave Ms. Smith a lumbar epidural steroid injection for bilateral low back pain radiating into her left buttock and leg. The injection gave Ms. Smith pain relief for about two months. At a July 2020 follow-up visit, Dr. Wyble recommended a second steroid injection, but Ms. Smith could not afford another injection.

In April 2021, over two years after the accident, Ms. Smith saw Dr. George Williams, an orthopedic surgeon, with continued complaints of low back pain radiating down her left leg, which she related to the accident. Dr. Williams reviewed Ms. Smith's December 2019 MRI and agreed that she had an L5-S1 disc protrusion and noted a "large" disc tear. Dr. Williams opined that Ms. Smith's pain was attributable to the L5-S1 disc protrusion or to a sacroiliac (SI) joint injury, and he recommended a diagnostic injection to further explore the source of her injury. Due to a lack of Medicaid coverage and/or her own inability to pay, Ms. Smith underwent no further diagnoses before trial. However, Dr. Williams testified at his deposition that, whether her pain was attributable to a disc or SI joint injury, either would first be treated with conservative treatment such as repeat injections, and then followed by surgery, if conservative treatment failed. He further opined that Ms. Smith's injury was serious, the disc tear would likely never heal, and given her continuing symptomology, the pain would continue indefinitely.

From September 2020 through January 2022, Ms. Smith regularly saw Dr. Michael A. Felton, her primary care physician, with consistent complaints of low back pain

5

radiating down her left buttock and leg. She also reported falling numerous times due to left leg pain and weakness. Dr. Felton prescribed medications and referred Ms. Smith to physical therapy in September 2020. After an April 2021 evaluation, Physical Therapist Phillip Ardoin noted that Ms. Smith would benefit from physical therapy. Although the record is unclear regarding how many times Ms. Smith went to physical therapy, she testified that the therapy caused burning pain in her back that "[hurt] really bad."

Dr. Chambliss Harrod, another orthopedic surgeon, reviewed Ms. Smith's medical records at defense counsel's request and agreed that she had an L5-S1 annular "fissure or tear." At his deposition, Dr. Harrod opined that he would be cautious recommending any surgery before further diagnostic testing, such as having Ms. Smith undergo an in-person independent medical examination, a repeat MRI, an EMG, and/or a nerve conduction study.

At trial, Ms. Smith acknowledged that, after the accident, she worried about the threat of miscarriage for the rest of her pregnancy. She stated that chiropractic treatment caused her to bleed vaginally, which made her nervous for her unborn child. She recounted a separate episode of vaginal bleeding in June 2019 and abdominal pain in September 2019, symptoms she did not have before the accident, which caused her to continue to be very scared that she would lose the baby. On cross-examination, she admitted that the high-risk nature of her pregnancy was unrelated to the accident and that her obstetrician never told her that she had any pregnancy problems related to the accident.

Regarding the effect of her injuries, Ms. Smith testified that, before the accident, she was an active mother who played basketball, football, and kickball with her three oldest children. She explained that she used to hold them, put them on her back, run with them, and "literally [enjoy] life" with them. She stated that, since the accident, she had become the "boring mama" who sits on the sideline and watches, because she can no longer "get out there like [she] used to" with her children. Ms. Smith noted that she would be unable to show her three-year-old youngest child "half of the things [she was] capable of," like teaching her how to ride a bike, because she "can't move that much." Ms. Smith also testified that, within the past couple of years, she had fallen about 15

times due to left leg pain and weakness. Although she continued to treat with Dr. Felton, Ms. Smith testified that her Medicaid benefits only cover certain treatment and she cannot otherwise afford more injections or any available surgery.

With the above evidence in support of Ms. Smith's general damage award, we now review general damage awards in similar cases, keeping in mind, that no two cases are alike. *Pete*, 379 So.3d at 647.

### General Damage Awards in Similar Cases

Mr. James offers two cases to support his argument that Ms. Smith's $265,000 damage award is abusively high. First, he references *Luquette v. Great Lakes Reinsurance (UK) PLC*, 16-422 (La. App. 5 Cir. 12/21/16), 209 So.3d 342, 345, *writ denied*, 2017-0136 (La. 3/13/17), 216 So.3d 806, in which a 35-year-old healthy man was diagnosed with a bulging L4-5 disc after slipping and falling on ice at a carwash. In the approximate 20 months between the accident and the trial, Mr. Luquette took medication, performed physical therapy, and had two epidural steroid injections - but, he continued to have low back pain. *Id.* at 350-51. The Fifth Circuit awarded Mr. Luquette $40,000 in general damages but reduced the award to account for Mr. Luquette's comparative fault. *Id.* at 352. Notably, the *Luquette* opinion contains no discussion of how Mr. Luquette's injury impacted his quality of life.

Mr. James next references *Hobgood v. State Farm Mut. Auto. Ins. Co.*, 2014-0581 (La. App. 4 Cir. 2/17/14), 156 So.3d 1244, 1247, in which a 57-year-old woman with pre-existing chronic back pain and mental health issues was diagnosed with three bulging lumbar discs after being injured in an automobile accident. Although Ms. Hobgood saw her personal physician multiple times after the accident, she did not mention the accident to him until almost two years after it happened. *Id.* at 1249. An orthopedic surgeon who examined Ms. Hobgood questioned whether the accident caused Ms. Hobgood's injuries and diagnosed her instead with degenerative disc disease and arthritis. *Id.* at 1250. Further, other evidence cast doubt on the severity of Ms. Hobgood's injury, including her ability to extensively travel domestically and abroad after the accident. *Id.* at 1254. In affirming the jury's $29,000 general damage award, the Fourth Circuit noted that the jury

7

either did not believe Ms. Hobgood's injuries to be as significant as claimed or found them attributable to a pre-existing degenerative condition. *Id.* at 1254-55.

We find the *Luquette* and *Hobgood* cases sufficiently distinguishable from the present case. Mr. Luquette's injury and treatment is similar to Ms. Smith's, but the case provides insufficient factual information regarding a key inquiry in our review – that is, how his continuing back pain before and at trial affected him, his family, and his lifestyle. Further, it appears Ms. Hobgood's proof of causation was questionable, her injuries did not hinder her post-accident activity, and there were noted issues with her credibility. These negative factors do not exist in the present case. Based on these differences, we decline to find that these two cases, awarding $40,000 and $29,000, respectively, show an abuse of the trial court's discretion in the general damages awarded to Ms. Smith.

In contrast, Ms. Smith offers several cases, which she argues support the $265,000 general damage award. Among them is *Boothe v. Dept. of Trans. and Dev.*, 2018-1746 (La. 6/29/19), 285 So.3d 451, 453 (*per curiam*), in which a mother of two school-aged children suffered a cervical disc fracture in an automobile accident. She wore a neck brace for five months, was unable to drive for several months, went to physical therapy, and took pain medication. *Id.* at 458. She sporadically treated with two physicians for several years. *Id.* At trial, at least six years after the accident, her condition was stable, she was not under any specific activity limitations, and her physician opined that conservative treatment remained appropriate. *Id.* However, Ms. Boothe continued to have severely limited motion in her neck, headaches, had reduced her work schedule to part-time, could no longer garden, and was no longer as active at home and on vacation as she used to be. *Id.* The Louisiana Supreme Court found $300,000 to be the highest amount of general damages reasonably awardable to Ms. Boothe. *Id.* at 459.

Ms. Smith also references *Edmond v. Cherokee Ins. Co.*, 2014-1509 (La. App. 1 Cir. 4/24/15), 170 So.3d 1029, 1039, 1041-42, in which a 56-year-old man suffered an L4-5 disc herniation in an automobile accident, requiring him to undergo multiple rounds of physical therapy, facet injections, a myelogram, and neurological testing for low back and radiating leg pain. At the time of trial, three and a half years after the accident, Mr. Edmond's treating orthopedist opined that his chance of improving without surgery was

slim. *Id.* at 1042. Mr. Edmond was also unable to return to his job as a plant operator after the accident because of his chronic pain and the restrictions placed on him by his physicians. *Id.* In reviewing the general damage award in *Edmond*, this Court found no abuse of discretion in the jury's $225,000 general damage award. *Id.* at 1043.

Our own research has produced other cases instructive of general damages associated with low back and leg injuries. For example, in *Latulippe v. Braun*, 18-83 (La. App. 5 Cir. 8/10/18), 253 So.3d 820, 824, 833, a 28-year-old father of two young children was diagnosed with three minor lumbar disc bulges after being in an automobile accident. Physical therapy and epidural injections did not ease Mr. Latulippe's resulting back pain, and two physicians advised against a surgical option. *Id.* at 825. At the time of trial, over two years after the accident, Mr. Latulippe managed his continuing pain with daily prescription narcotic medication and testified such was necessary for him to continue to work full-time. *Id.* at 825-26. Mr. Latulippe also testified that the prescription medication made him "lazy," caused him to "lash out" at his wife and children, and had taken a huge toll on his marriage. *Id.* at 826. Other witnesses, including his wife and father, testified that Mr. Latulippe had become a "hermit," no longer exercised or socialized, and did not enjoy previously enjoyed family activities, such as softball, fishing, and four-wheel riding; his wife testified that their children were not growing up with the same man she married. *Id.* at 826. The Fifth Circuit affirmed the $150,000 general damage award and noted that Mr. Latulippe, who was not a surgical candidate, would likely experience lifelong pain. *Id.* at 833.[3]

Finally, we review cases wherein general damages have been awarded to pregnant women whose post-accident injuries included fear for the health of their unborn children. In *Bailey v. Leblanc*, 151 So.3d at 1005, 1013, a 22-year-old woman, five months into a high-risk pregnancy, sustained neck and back sprains in an automobile accident, causing pain throughout her pregnancy and after her child's birth. *Id.* at 1006. An ultrasound

---

[3] We mention another notable case. In *Melder v. Brookshire's Grocery Company*, 2014-669 (La. App. 3 Cir. 12/10/14), 154 So.3d 781, 782-83, the Third Circuit affirmed a $274,000 general damage award in favor of an 80-year-old plaintiff struck by a sign that fell in a grocery store. Mrs. Melder had a pre-existing degenerative lumbar condition before the accident, which she controlled with medication, and which did not interfere with her very busy lifestyle. *Id.* at. 785-86. However, after the accident, Mrs. Melder had chronic low back pain that radiated down both legs, which required that she drastically curtail her activities and rest in bed for hours each day. *Id.* at 786.

confirmed the child was unharmed, but Ms. Bailey continued to worry that the accident had harmed her child. *Id.* at 1012. She delayed treatment of her injuries until after the child's birth and took no medications while pregnant or while breastfeeding her newborn. *Id.* at 1010. The Third Circuit found $40,000 to be an appropriate general damage award for Ms. Bailey's injuries. *Id.* at 1013.

In another case, *Morris v. Flores*, 36,932 (La. App. 2 Cir. 3/7/03), 840 So.2d 1257, 1263, a seven-month pregnant woman was hospitalized for two days after an automobile accident for observation regarding possible early delivery of her child. In addition to fearing for her unborn child's health, Ms. Morris was referred to physical therapy for soft tissue injury pain; treated for neck, back, and arm pain and numbness for about 11 months; and, delivered her child early due to pain for which she could not take pain medications. *Id.* at 1263-64. Ms. Morris also incurred a disfiguring face scar in the accident. *Id.* at 1263. Considering all of her injuries, and after reviewing similar cases, the Second Circuit found that the lowest amount the trial court could have reasonably awarded Ms. Morris in general damages was $25,000. *Id.* at 1264-65. We note the *Morris* case is over 20 years old.

### Findings after Review

We have considered Ms. Smith's particular injuries, their effects upon her, as well as the above, and other, prior awards for similar injuries. *See Pete*, 379 So.3d at 640. Reviewing the total award for all of Ms. Smith's injuries, rather than any single component (*see Doe*, 316 So.3d at 1104), we conclude the trial court did not abuse its vast discretion in awarding her general damages of $265,000. Before the accident, Ms. Smith was a healthy, active mother of three children, with no history of back or leg pain. After the accident, she worried for about seven months about the health of her unborn child. She also continually suffered with back and leg pain, which the medical evidence attributes either to a bulging disc with disc tear or an injured SI joint. At the time of trial, about four years after the accident, Ms. Smith remained in pain and had begun to frequently fall due to left leg pain and weakness. As noted by the trial court, Ms. Smith did not diligently follow the diagnostic and treatment plans recommended by Drs. Wyble, Williams, and Felton. However, the record shows that Ms. Smith's lack of diligence was

10

due to fear that chiropractic treatment would harm her unborn child, delay of treatment until after her child was born, and her inability to obtain certain treatment due to Medicaid limitations. According to Dr. Williams, Ms. Smith's pain will continue indefinitely without further treatment, whether that be effective conservative treatment, or failing that, surgery. Further, the record shows that Ms. Smith's lifestyle markedly changed after the accident. The formerly active mother of three young children is now an inactive mother of four young children who frequently falls.

We find the general damage awards in *Boothe* ($300,000), *Edmond* ($200,000), and *Latulippe* ($150,000), as well as those awarded in *Bailey* ($40,000) and *Morris* ($25,000) support our conclusion. The physical injuries in the first three cases are relatively similar to the physical injuries Ms. Smith sustained and resulted in chronic pain. Further, similar to Ms. Smith, all three plaintiffs in these cases experienced notable lifestyle changes because of their physical injuries, including becoming less active and unable to return to work. Lastly, the pregnant women in the last two cases both feared for their unborn children for several months, but fortunately delivered healthy children, just as Ms. Smith did. Thus, upon review of the facts, injuries, effects, and prior similar awards, we find no abuse of discretion.

## CONCLUSION

For the foregoing reasons, we find no abuse of discretion in the trial court's general damage award to Antonette Smith. We affirm the June 1, 2023 judgment and assess costs of the appeal to Devaun James.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

DOCKET NO. 2023 CA 1098

ANTONETTE SMITH INDIVIDUALLY AND
ON BEHALF OF MINORS, TANIYAH DANIEL,
TEVIN DANIEL, JR. AND TRINITY SMITH

VERSUS

GOAUTO INSURANCE COMPANY
AND JAMES DEVAUN

**THERIOT, J., dissenting and assigning reasons.**

I find the trial court abused its discretion when it awarded Ms. Smith

$265,000 in general damages. The factors to be considered in assessing quantum of

general damages for pain and suffering are severity and duration. *See* **Willis v.**

**Noble Drilling (US), Inc.,** 11-598, p.19 (La. App. 5 Cir. 11/13/12), 105 So.3d 828,

845.

While I understand Ms. Smith's financial limitations (and her decision to

delay treatment until after safely delivering her child), I must point out that the

very nature of Ms. Smith's injury is uncertain due to her failure to continue seeking

treatment. It appears that Ms. Smith has a bulging disc with a disc tear and/or an

injured SI joint, but the exact nature of her injuries has not been proven.

Ms. Smith received one lumbar epidural steroid injection, administered by

Dr. Stephen Wyble, a pain medicine physician, in February 2020. Dr. Wyble

recommended a second steroid injection, but Ms. Smith could not afford it. Dr.

George Williams, an orthopedic surgeon, recommended conservative treatment

(including an injection to Ms. Smith's SI joint, which she had not had as of the

date of trial) and stated that he would only recommend surgery if that treatment

failed. Accordingly, Ms. Smith has not proven that surgery would be necessary, which I believe is an essential consideration in determining how much she should have received in general damages.

The Louisiana Supreme Court recently provided a new rule for the consideration of prior awards to determine whether a trial court has abused its discretion. In **Pete v. Boland Marine & Mfg. Co. LLC**, 23-00170, p.2 (La. 10/20/23), 379 So.3d 636, 639, the Supreme Court explained the new rule as follows:

> The inherently subjective nature of the abuse of discretion standard in the context of reviewing general damage awards compels that some measures of objectivity be incorporated into the determination of an award's reasonableness, so that there is some standard for comparison. We now hold that an appellate court must consider relevant prior general damage as guidance in determining whether a trier of fact's award is an abuse of discretion.

Most cases involving an injury similar to Ms. Smith's injury resulted in much smaller awards. *See* **Webb v. Horton**, 01-978 (La. App. 5 Cir. 2/13/02), 812 So.2d 91 (wherein the Fifth Circuit concluded that the lowest reasonable general damage award for a non-surgical herniated disc was $50,000.00); **Collier v. Benedetto**, 04-1025 (La. App. 5 Cir. 2/15/05), 897 So.2d 775 (wherein the Fifth Circuit increased a general damage award from $50,000.00 to $75,000.00 after finding that the initial award was abusively low for a plaintiff who sustained injuries to his back, neck, knee, thigh and shoulder, a small right disc protrusion at C5-C6, and cervical and lumbar muscle strains, and remained symptomatic at the time of trial); **Copell v. Arcenaux Ford, Inc.**, 2020-299 (La. App. 3 Cir. 6/9/21), 322 So.3d 886 (wherein the Third Circuit, in a case involving a 26-year-old plaintiff diagnosed with a disc bulge, which caused constant neck pain, radicular pain, and headaches that improved somewhat after undergoing one surgery but who would ultimately require a second surgery, found that $100,000.00 was the lowest reasonable award for the past and future physical pain and suffering);

2

**Locke v. Young**, 42,703 (La. App. 2 Cir. 12/12/07), 973 So.2d 831 (wherein the Second Circuit, noting the plaintiff had two bulging discs and daily lower back pain, reduced a $150,000.00 award for that particular injury to $75,000.00).

Our own circuit has ruled similarly. For instance, in **Hebert v. Boesch**, 2015-1791 (La. App. 1 Cir. 6/3/16), 194 So.3d 798, this court affirmed a general damage award of $75,000.00 for the pain and suffering of a 32-year-old plaintiff diagnosed with two-disc bulges, for which his doctor recommended conservative treatment but which would affect him for the rest of his life. The case before us can also be contrasted with **Matos v. Clarendon Nat. Ins. Co.**, 2000-2814 (La. App. 1 Cir. 2/15/02), 808 So.2d 841, wherein this court affirmed a general damage award of $265,000.00 to a 26-year-old plaintiff who was rear-ended by a large truck pulling a flatbed trailer and had suffered a herniated disc, disc protrusion, and disc bulges as a result and who had undergone one surgery and intended to undergo another.

Considering the above and factoring in inflation, I believe the highest reasonable award that the trial court could have awarded for Ms. Smith's past and future physical pain and suffering is $100,000.00. I agree with the trial court's pregnancy-related damage award (totaling $15,000.00), therefore, I would reduce the general damage award from $265,000.00 to $115,000.00.